UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
────────────────────────────────

PAYDAY ADVANCE PLUS, INC., individually
and on behalf of all persons similarly
situated and on behalf of the general        06 Civ. 1923 (JGK)
public,

                                             OPINION AND ORDER

                    Plaintiff,

          - against -

FINDWHAT.COM, INC., and
ADVERTISING.COM, INC.,

                    Defendants.
────────────────────────────────

JOHN G. KOELTL, District Judge:

     The plaintiff, Payday Advance Plus, Inc. ("Payday"), brings

this alleged class action seeking monetary and injunctive relief

on behalf of itself and putative class members who contracted

with the defendant Findwhat.com, Inc. ("Findwhat")[1] to provide

them with keyword-targeted advertising through Findwhat's

Internet search engine.[2]  The allegations also involve the

defendant Advertising.com, Inc. ("Advertising"), an online

advertising provider that allegedly shared revenues with

Findwhat and took actions that artificially inflated the costs

Payday had to pay under its agreement with Findwhat.  In short,

Payday claims that Advertising, at Findwhat's direction, engaged

─────────────────

     [1]  Findwhat changed its name to MIVA, Inc. in June 2005 (Compl. ¶ 12),
but it is referred to as Findwhat throughout for simplicity.

     [2]  The plaintiff has not yet moved for class certification, so only the
allegations with respect to Payday are before the Court.  Jurisdiction is
asserted under the amended diversity statute, 28 U.S.C. § 1332(d), and under
the terms of the alleged contract between Payday and Findwhat.

in "click fraud" by employing individuals and "robot" computer programs (commonly called "bots") to click on Payday's hyperlinked advertisements and thereby caused Payday to incur inflated charges under its agreement with Findwhat.

Payday asserts six claims in its Complaint, but it concedes that New York does not recognize a "joint venture" cause of action and that New York General Business Law Section 349 is inapplicable (Counts Five and Six, respectively).  The four remaining claims are for breach of contract (Count One), unjust enrichment (Count Two), negligence (Count Three), and civil conspiracy (Count Four).  The contract claim is alleged only against Findwhat, while the other three remaining claims are alleged against both defendants.  Each defendant has moved to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

**I.**

**A.**

On a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the Complaint are accepted as true.  <u>Grandon v. Merrill Lynch & Co.</u>, 147 F.3d 184, 188 (2d Cir. 1998).  In deciding a motion to dismiss, all reasonable inferences must be drawn in the plaintiff's favor.  <u>Gant v. Wallingford Bd. of Educ.</u>, 69 F.3d 669, 673 (2d Cir. 1995); <u>Cosmas v. Hassett</u>, 886

F.2d 8, 11 (2d Cir. 1989).  The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient."  Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985).  Therefore, the defendants' present motions should only be granted if it appears that the plaintiff can prove no set of facts in support of its claims that would entitle it to relief.  See Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 514 (2002) (citing Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984)); Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Grandon, 147 F.3d at 188; Goldman, 754 F.2d at 1065.

While the Court should construe the factual allegations in the light most favorable to the plaintiff, the Court is not required to accept legal conclusions asserted in the Complaint. See Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236, 240 (2d Cir. 2002); Barile v. City of Hartford, 386 F. Supp. 2d 53, 54 (D. Conn. 2005).

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the Complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken.  Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002); see also Taylor v. Vermont

Dep't of Educ., 313 F.3d 768, 776 (2d Cir. 2002); Kramer v. Time
Warner, Inc., 937 F.2d 767, 773 (2d Cir. 1991); Brass v. Am.
Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993); Cortec
Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47-48 (2d Cir.
1991); VTech Holdings Ltd. v. Lucent Techs., Inc., 172 F. Supp.
2d 435, 437 (S.D.N.Y. 2001).

### B.

For the purposes of deciding these motions to dismiss, the
following facts alleged in the Complaint are accepted as true.

The defendant Findwhat is a company that offers advertising
services in connection with its Internet search engine.  (Compl.
¶¶ 1, 12, 19.)  In particular, it uses the "pay-per-click"
("PPC") marketing formula to price the advertisements it
provides.  Under this formula, an advertising customer bids on
one or more keywords which, when entered into Findwhat's search
engine by Internet users, will return a hyperlink (or "link") to
the advertising customer's web site alongside the search results
returned by the search engine.  The customer then pays Findwhat
a "per click" fee for every time that an Internet user actually
clicks on the advertising customer's ad.  (Id. ¶¶ 18-21.)
Payments average around fifty cents per click, although they can
reach one hundred dollars or more for the most sought-after
keywords.  (Id. ¶ 21.)

The plaintiff Payday entered into an agreement with Findwhat to provide PPC advertising services on January 3, 2004.[3] (Compl. ¶¶ 16, 54-57.)

The defendant Advertising is a provider of online advertising and the developer of "ClickTracker," a software measurement tool that allows tracking and measurement of sales on Internet sites. (Id. ¶ 14.)  At some point prior to 2000, Advertising entered into an "affiliate relationship" with Findwhat which provided that the companies would split their revenues from PPC advertising business. (Id. ¶ 25.)

Pursuant to this relationship, Findwhat sent keyword information to Advertising, and Advertising would in return direct Internet traffic to Findwhat's search results listings. (Id. ¶ 26.)  Findwhat and Advertising allegedly participated in

_____

[3]  Payday directly quotes one clause from the alleged contract in its Complaint in support of this Court's jurisdiction and the application of New York law.  However, Payday does not include the remainder of the written agreement in its pleadings.  In response, Findwhat's Vice President represents that Payday entered into the agreement on January 3, 2004, and an unsigned statement of terms and conditions that includes the clause quoted in the Complaint is attached to his declaration.  (Decl. of Scott Reinke, May 11, 2006, ¶ 3 & Ex. 1.)  Payday concurs that it opened its account with Findwhat on January 3, 2004.

In an unusual turn, Payday has declined to admit that the statement of terms and conditions submitted by Findwhat reflects the terms of its alleged contract, despite the fact that the language Payday quotes in its Complaint appears verbatim in the document Findwhat submitted.  During the argument of the current motions, Payday's counsel represented that Payday signed an agreement but did not keep a copy and he pointed out that the copy relied on by Findwhat was unsigned.  Payday argues that the exact terms of the agreement are issues of fact that cannot be decided on a motion to dismiss.  Because the statement of terms and conditions is unsigned and it is unclear that Payday relied on it in bringing its Complaint, the Court will not consider it for the purposes of these Rule 12(b)(6) motions.  See Chambers v. Time Warner, Inc., 282 F.3d at 153-54 & n.5.  The Court must instead rely on the sparse allegations with respect to the contract contained in the Complaint itself.

the bidding process for keywords used to trigger PPC ads.  As a result, the Complaint alleges, the PPC prices for certain popular keywords were artificially inflated through the defendants' efforts.  (Id. ¶ 27.)

At the direction of Findwhat, Advertising allegedly hired people to conduct Internet searches through Findwhat's search engine using certain keywords that would trigger search results and advertising listings.  Advertising instructed these people to click on certain advertising links from the search results, including Payday's links, thereby causing Payday to incur PPC charges for each such click.  (Id. ¶¶ 33, 35.)  Also at the direction of Findwhat, Advertising used computer programs or "bots" to click continuously and systematically on Payday's advertising links to increase the defendants' revenues.  These "bots" were able to "spoof" different reference points on the Internet to make it appear that the clicks came from different sources.  (Id. ¶ 34.)  These methods, which Payday calls "click fraud" (id. ¶ 28 (noting distinction from common law notion of fraud)), led Payday to be charged for clicks that were not the result of genuine interest from consumers or of genuine market activity.  (Id. ¶ 35.)

Click fraud can be prevented by tracking how often the same individual clicks on a PPC advertisement.  Certain computer programs can count the number of clicks originating from a

6

single source and track whether those clicks result in sales. (Id. ¶ 29.)  Findwhat has provided a small number of rebates to advertisers who have complained about being victims of click fraud, suggesting that Findwhat has recognized that click fraud exists and has some ability to ascertain which clicks constitute click fraud.  (Id. ¶¶ 31, 37.)

Findwhat allegedly has no internal controls, policies, or procedures to monitor whether traffic going to its paid advertisers' sites comes from potential customers or from "bots."  (Id. ¶ 39.)

## II.

Each defendant has moved to dismiss all relevant claims of the Complaint.  Because Payday does not oppose the motions to dismiss its claims for joint venture and for violation of New York General Business Law Section 349, Counts Five and Six, respectively, these claims are **dismissed.**  The remaining claims are discussed in turn below.

## A.

Payday asserts its breach of contract claim only against the defendant Findwhat.  Payday alleges that Findwhat "contractually agreed to provide Internet PPC advertising services to Plaintiff, and to only charge Plaintiff for the

actual click through advertising from actual consumers" and that
Findwhat breached this provision by "collecting revenues . . .
for advertising and/or services that were not generated from
potential consumers, but from individuals, 'robot' programs and
other software employed by the Defendants solely designed to
increase traffic to Plaintiff's website and drive up revenue."
(Compl. ¶¶ 55-56.)  Findwhat contends that Payday's
characterization of the contract is incorrect, based on the
statement of terms and conditions under which Findwhat enters
into PPC advertising agreements.

Under New York law, which governs this contract,[4] "the
initial interpretation of a contract 'is a matter of law for the
court to decide.'"  K. Bell & Assocs., Inc. v. Lloyd's
Underwriters, 97 F.3d 632, 637 (2d Cir. 1996) (quoting Readco,
Inc. v. Marine Midland Bank, 81 F.3d 295, 299 (2d Cir. 1996));
see also Curry Rd. Ltd. v. K Mart Corp., 893 F.2d 509, 511 (2d
Cir. 1990) ("Whether a contract is ambiguous is a question of
law.").  A court should construe a contract as a matter of law
only if the contract is unambiguous on its face.  See Metro.
Life Ins. Co. v. RJR Nabisco Inc., 906 F.2d 884, 889 (2d Cir.
1990).  A contract is unambiguous if it "has 'a definite and

---

[4]  Because both parties to the contract rely on a choice of law
provision that states that the agreement "shall be governed by and construed
in accordance with the substantive laws of the State of New York," it is
undisputed that New York law applies.

precise meaning, unattended by danger of misconception in the
purport of the [contract] itself, and concerning which there is
no reasonable basis for a difference of opinion.'" Sayers v.
Rochester Tel. Corp. Supplemental Mgmt. Pension Plan, 7 F.3d
1091, 1095 (2d Cir. 1993) (alteration in original) (quoting
Breed v. Ins. Co. of N. Am., 385 N.E.2d 1280, 1282 (N.Y. 1978));
see also United Nat'l Ins. Co. v. Waterfront N.Y. Realty Corp.,
994 F.2d 105, 109 (2d Cir. 1993); Metro. Life Ins. Co., 906 F.2d
at 889.  Where the contractual language is subject to more than
one reasonable meaning and where extrinsic evidence of the
parties' intent exists, the question of the proper
interpretation should be submitted to the trier of fact.
Consarc Corp. v. Marine Midland Bank, N.A., 996 F.2d 568, 573
(2d Cir. 1993); Abner, Herrman & Brock, Inc. v. Great N. Ins.
Co., 308 F. Supp. 2d 331, 336 (S.D.N.Y. 2004).

     As noted above, Payday's refusal to acknowledge that the
unsigned statement of terms and conditions submitted by Findwhat
represents the actual agreement of the parties renders
Findwhat's reliance on its statement of terms and conditions
insufficient at this stage.  Because there has been no agreement
on the language that reflects the contract terms, and because
there is a reasonable dispute as to the meaning of the terms
relating to the "clicks" for which Payday owed payments, the

Court cannot find as a matter of law that the contract is unambiguous.

Even if Findwhat were correct that its statement of terms and conditions governs the contract and that these terms did not limit PPC charges to clicks from "actual consumers," however, Payday argues that an interpretation of the contract that would allow the defendants deliberately to generate clicks on Payday's site from users or "bots" who plainly have no intention of making purchases should be disallowed because it would violate the implied covenant of good faith and fair dealing.

New York recognizes as implicit in every contract "a covenant of good faith and fair dealing in the course of contract performance." Dalton v. Educ. Testing Serv., 663 N.E.2d 289, 291 (N.Y. 1995); see also Jofen v. Epoch Biosciences, Inc., 01 Civ. 4129, 2002 WL 1461351, at *8 (S.D.N.Y. July 8, 2002); Restatement (Second) of Contracts § 205 & cmt. d (1981).  This covenant incorporates "any promises which a reasonable person in the position of the promisee would be justified in understanding were included," Rowe v. Great Atl. & Pac. Tea Co., 385 N.E.2d 566, 569 (N.Y. 1978) (citation and quotation marks omitted), although it does not include any obligation that would be inconsistent with the express terms of the contract, see Dalton, 663 N.E.2d at 291-92.  In particular, the covenant includes a pledge that "neither party shall do

10

anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract."  Id. at 291 (quoting Kirke La Shelle Co. v. Armstrong Co., 188 N.E. 163, 167 (N.Y. 1933)); see M/A-COM Sec. Corp. v. Galesi, 904 F.2d 134, 136 (2d Cir. 1990).

Findwhat argues that Payday never alleges in the Complaint that Findwhat violated the implied covenant of good faith and fair dealing.  However, a breach of the implied covenant is not a separate cause of action, but is instead one way of establishing a breach of contract.  See, e.g., MDC Corp., Inc. v. John H. Harland Co., 228 F. Supp. 2d 387, 395 (S.D.N.Y. 2002); Apfel v. Prudential-Bache Secs., Inc., 583 N.Y.S.2d 386, 387 (App. Div. 1992).  The Complaint alleges an "express[] and/or implicit[]" agreement to charge only for clicks by "actual consumers" (Compl. ¶ 55), which provides a basis for an argument that the implied covenant was breached.

Findwhat also contends that a violation of the implied covenant can only serve as a defense to liability, rather than as a basis for liability on a breach of contract claim.  While the primary decision on which Findwhat relies does include language of a Magistrate Judge's Report and Recommendation to this effect, see Sundaram v. Brookhaven Nat'l Labs., 424 F. Supp. 2d 545, 585 (E.D.N.Y. 2006) ("[A] party may assert breach of the covenant as a defense to a contract claim made by

another, much like the doctrine of unconscionability, but may not assert a breach of the covenant as an independent basis for imposing liability on another."), that decision is not controlling.  The actual holding in that decision was the uncontroversial proposition that a breach of the covenant of good faith and fair dealing did not establish "an independent basis for recovery."  Id. at 584; see also Apfel, 583 N.Y.S.2d at 439 (affirming dismissal of a cause of action for breach of good faith as "duplicative of a cause of action alleging breach of contract, since every contract contains an implied covenant of good faith and fair dealing").  There is controlling authority that the covenant of good faith and fair dealing can be used to interpret the duties of the parties to a contract and can be used by a plaintiff as a basis for the plaintiff's claim that the contract between the parties was breached.  See Dalton, 663 N.E.2d at 293 (using covenant of good faith and fair dealing to support plaintiff's claim that defendant's testing firm breached its contract with the plaintiff); see also Dweck Law Firm , L.L.P. v. Mann, 340 F. Supp. 2d 353, 358-59 (S.D.N.Y. 2004); 1-10 Indus. Assocs., LLC v. Trim Corp., 747 N.Y.S.2d 29, 31 (App. Div. 2002).

     The facts alleged in the Complaint, if taken to be true, suggest that Findwhat could have violated its implied covenant by inflating the bidding prices for search terms and by

directing Advertising to generate "clicks" on Payday's website by people or "bots" who had no purpose for visiting the site other than to generate revenues for Findwhat and Advertising. Because this tactic would allow Findwhat to increase its profits solely at its discretion and with no benefit to Payday, it is plausible that it could be found to "destroy[] or injur[e]" Payday's rights under the contract.   <u>Dalton</u>, 663 N.E.2d at 291. It is furthermore likely that a reasonable advertiser entering into such a contract would expect that, whatever the external risks of unproductive "clicks," it would not be subjected to unbounded increases in its prices at the hands of its promisor or at its promisor's direction.

For all of these reasons, the breach of contract claim cannot be dismissed at this stage.

### B.

Payday asserts its remaining claims against both Findwhat and Advertising.

### 1.

Payday alleges that both defendants were unjustly enriched by overcharging Payday for PPC advertising.   To establish a claim of unjust enrichment under New York law, a plaintiff must allege (1) that the defendants benefited (2) at the plaintiff's expense, and (3) that equity and good conscience require

restitution.  Kaye v. Grossman, 202 F.3d 611, 616 (2d Cir. 2000)
(citing Dolmetta v. Uintah Nat'l Corp., 712 F.2d 15, 20 (2d Cir.
1983)).  However, "[u]njust enrichment is a quasi-contract
claim, and the existence of a valid and enforceable written
contract governing a particular subject matter ordinarily
precludes recovery in quasi-contract for events arising out of
the same subject matter."  Jofen, 2002 WL 1461351 at *9
(alteration in original) (quoting Chrysler Capital Corp. v.
Century Power Corp., 778 F. Supp. 1260, 1272 (S.D.N.Y. 1991));
see also Clark-Fitzpatrick, Inc. v. Long Island R.R. Co., 516
N.E.2d 190, 193 (N.Y. 1987).

    Payday asserts in its Complaint that the alleged
overcharges breached its contract with Findwhat, which Payday
claims included an express or implicit agreement "to only charge
Plaintiff for the actual click through advertising from actual
customers."  (Compl. ¶ 55.)  The subject matter of Payday's
unjust enrichment claim is therefore governed by the contract,
which the parties do not dispute existed.  In support of its
claim, Payday relies on cases which suggest that under certain
conditions the same conduct can support both a breach of
contract claim and a tort claim, but those cases are inapposite
because an unjust enrichment claim is an equitable quasi-
contract claim, not a tort claim.  E.g., Golden Pac. Bancorp v.
F.D.I.C., 95 Civ. 9281, 1997 WL 626374, at *1 (S.D.N.Y. Oct. 7,

1997).  Hence, the unjust enrichment claim does not state a valid claim against Findwhat.  Cf. Jofen, 2002 WL 1461351 at *10; Clark-Fitzpatrick, 516 N.E.2d at 193.

The Complaint similarly fails to state a valid unjust enrichment claim against Advertising.  The rule that an unjust enrichment claim does not lie where a valid, enforceable written contract governs the same subject matter extends to cases where one of the parties was not a party to the contract.  See Mina Inv. Holdings Ltd. v. Lefkowitz, 16 F. Supp. 2d 355, 361 (S.D.N.Y. 1998); Graystone Materials, Inc. v. Pyramid Champlain Co., 604 N.Y.S.2d 295, 296 (App. Div. 1993).  While the Complaint alleges an "affiliate relationship" between Findwhat and Advertising that predates Payday's contract with Findwhat (Compl. ¶ 25), it does not allege that Advertising received any money other than a portion of the payments Payday made pursuant to its contract with Findwhat.  As in the cases just cited, these payments fall within the purview of the contract and hence there is no basis for an unjust enrichment claim against Advertising.

The case Payday relies upon, State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C., 375 F. Supp. 2d 141 (E.D.N.Y. 2005), is not to the contrary.  In that decision, the court found an automobile insurer's unjust enrichment claim against doctors to whom it made insurance payments for allegedly unnecessary

medical tests performed on insureds did survive a motion to dismiss.  Id. at 147, 154-55.  While a contract in that case existed between the insureds and the insurer, a direct payment relationship existed between the insurer and medical providers because of the state regulatory regime that provided for the direct assignment of benefits to medical providers and for the direct submission of claims by medical providers to insurers. Id. at 147.  There was thus a direct payment relationship between the insurer and medical providers, which left the insureds out of that relationship.

The unjust enrichment claim is therefore **dismissed**.


**2.**

Payday alleges that both defendants are liable for its artificially inflated PPC prices under a negligence theory.  The Complaint alleges that the defendants "owed a duty to Plaintiff . . . to monitor its PPC program for click fraud and to protect Plaintiff . . . from click fraud to ensure that Plaintiff . . . [was] charged only for actual clicks" and that the defendants breached that duty by "failing to adequately monitor for click fraud, failing to protect Plaintiff . . . from click fraud, and for charging Plaintiff . . . for purposeful clicks on search advertisements generated for an improper purpose."  (Compl. ¶¶ 62-63.)

16

A negligence claim under New York law requires a plaintiff to establish "(i) a duty owed to the plaintiff by the defendant[s], (ii) breach of that duty, and (iii) injury substantially caused by that breach." Lombard v. Booz-Allen & Hamilton, Inc., 280 F.3d 209, 215 (2d Cir. 2002). Where the only duty owed to the plaintiff arises because of a valid contract, a negligence claim does not lie. See, e.g., Clark-Fitzpatrick, 516 N.E.2d at 193 ("It is a well-established principle that a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated."); Manes Org., Inc. v. Meadowbrook Richman, Inc., 770 N.Y.S.2d 27, 28 (App. Div. 2003). In certain cases in the "borderland" between tort and contract, "[a] legal duty independent of contractual obligations may be imposed by law as an incident to the parties' relationship." Sommer v. Fed. Signal Corp., 593 N.E. 1365, 1369 (N.Y. 1992). The existence of an independent duty, such as that applied to professionals, common carriers, and bailees, depends upon policy concerns about "the nature of the injury, the manner in which the injury occurred and the resulting harm." Id.

While Payday claims that the defendants owed a duty to monitor for click fraud and to ensure that Payday was only charged for "actual" clicks, it does not allege any source for this duty apart from Payday's contract with Findwhat. Payday

points to portions of the Complaint recounting statements
Findwhat allegedly made to promote its PPC advertising service,
and Payday further argues that Findwhat was in the best position
to detect and prevent click fraud.  These arguments are
insufficient to establish an independent duty apart from the
business relationship between Payday and Findwhat, which was
governed by their contract.  The facts of this case are
singularly unlike those in Sommer, where the New York Court of
Appeals found that a fire alarm company's failure to report a
fire alarm signal could be the basis for a claim of negligence
despite the existence of a contract because of the significant
public interest in preventing the catastrophic results of an
unreported fire and because of the comprehensive regulatory
scheme for providing a rapid response to fires.  Sommer, 593
N.E.2d at 1370.

Payday has not established any relationship at all between
itself and Advertising that would establish a duty of care.  In
fact, Payday argues only that Advertising should be jointly and
severally liable for torts committed by Findwhat because the two
companies were "joint venture partners."  Because the negligence
claim cannot stand against Findwhat, there is no basis for
liability against Advertising.

The negligence claim is therefore **dismissed.**

**3.**

Payday also asserts a civil conspiracy claim against both defendants.  New York, however, does not recognize a substantive tort of civil conspiracy.  E.g., Antonios A. Alevizopoulos & Assocs. v. Comcast Int'l Holdings, Inc., 100 F. Supp. 2d 178, 187 (S.D.N.Y. 2000).  In order to state a claim for civil conspiracy, therefore, there must be allegations of an independent intentional tort.  Agron v. Douglas W. Dunham, Esq. & Assocs., 02 Civ. 10071, 2004 WL 691682, at *6 (S.D.N.Y. Mar. 31, 2004); Alevizopoulos & Assocs., 100 F. Supp. 2d at 187-88.

In its opposition brief, Payday argues that despite its label in the Complaint, the civil conspiracy count alleges the intentional tort of fraudulent concealment.  Under New York law, the elements of fraudulent concealment include "a relationship between the contracting parties that creates a duty to disclose, knowledge of the material facts by the party bound to disclose, scienter, reliance, and damage.  Aetna Cas. & Sur. Co. v. Aniero Concrete Co., 404 F.3d 566, 582 (2d Cir. 2005).  A duty to disclose arises "where the parties are in a fiduciary relationship; under the 'special facts doctrine,' where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge; or where a party has made a partial or ambiguous statement, whose full meaning will only be made clear

after complete disclosure." Id. (internal quotation marks and citations omitted).

When pleading a fraudulent concealment claim, a plaintiff must comply with the particularity requirements of Federal Rule of Civil Procedure 9(b). Id.; Allied Irish Banks, P.L.C. v. Bank of America, N.A., 03 Civ. 3748, 2006 WL 278138, at *6 (S.D.N.Y. Feb. 2, 2006).

In support of its civil conspiracy claim, Payday alleges that the defendants conspired to conceal that Findwhat was overcharging customers such as Payday for their PPC advertisements, and that Payday was injured by having to pay the resulting overcharges. (Compl. ¶¶ 67-71.) Payday also asserts that the defendants had a duty to disclose to Payday their knowledge that they were overcharging it. (Id. ¶ 50.) However, Payday has not directly pleaded fraudulent concealment as part of its civil conspiracy, and it has not specifically alleged reliance or the basis on which it relies for a duty to disclose. The plaintiff has failed to meet the heightened pleading requirement for fraudulent concealment under Rule 9(b).

Payday specifically requests an opportunity to amend its claim for civil conspiracy to clarify its intention to plead the independent tort of fraudulent concealment, should the current pleading be found inadequate. For this reason, the civil conspiracy claim is **dismissed without prejudice to repleading**.

C.

Finally, Advertising argues that all of Payday's claims asserted against it are time-barred because the "strategic alliance" allegedly entered into by Findwhat and Advertising began prior to 2000.  Advertising contends that the plaintiff therefore must have begun suffering injury from the defendants' acts no later than December 31, 1999, meaning that all of its causes of action accrued more than six years ago and thus outside the statutory period for any of the claims.

This defense makes little sense with respect to Payday because Payday did not even enter into its contract with Findwhat until January 3, 2004 and it filed this action well within the smallest applicable statutory period measured from that date.[5]  Furthermore, Payday claims that it was not put on notice of any of its claims until 2005.  Although the breach of contract claim is not alleged against Advertising, the other claims are all predicated upon losses Payday incurred as a result of inflated charges under its PPC advertising agreement with Findwhat.  Therefore none of Payday's claims against Advertising is time-barred.[6]

---

[5]  This defense could become relevant to other class members if Payday were to establish class certification, but the limitations period and any arguments for its tolling with respect to other putative class members cannot be considered at this stage.

[6]  The Court has considered all of the defendants' additional arguments for dismissing the Complaint and has found them to be either moot or without merit.

## CONCLUSION

For the reasons discussed above, the motion to dismiss Count One, the breach of contract claim, is **denied**.  The motions to dismiss Counts Two through Six are **granted**.  Payday has also requested the opportunity to file an amended complaint pursuant to Federal Rule of Civil Procedure 15(a).  Because leave to amend should be "freely given," the plaintiff may file an amended complaint within twenty (20) days of the date it receives this Opinion and Order.[7]

**SO ORDERED.**

**Dated:**      **New York, New York**
             **March __11__, 2007**

John G. Koeltl
United States District Judge

---

[7]   Findwhat concedes that it is possible that the plaintiff could replead its claims for negligence and civil conspiracy, although any repleaded claims could be subject to a motion to dismiss to determine if they state viable claims.  While it is unlikely that the plaintiff could replead the unjust enrichment claim in a way that would not be futile, the plaintiff is not barred from attempting to do so.